DE MOTT *v.* BENSON and others.

Where a bond and mortgage are given on a settlement of accounts, balances being struck and assented to at the time, they are *prima facie* evidence of the amount; and when the mortgagor denies the extent of amount, the burthen of proof is on the latter—on the principle of surcharging and falsifying. And where (as in the case before the court) there is no general order or decree throwing open the accounts and allowing a general accounting, the defendant is only at liberty to surcharge and falsify as to the particular items pointed out by his answer; and cannot have the benefit of error in other items, although, on a reference, they may be apparent.

In matters of account before a master, the defendant's answer (on oath) is evidence so far as it is responsive to the complainant's bill.

An exception to a master's report, depending on matter of fact which does not appear upon its face, must be overruled.

Bill by mortgagor not setting forth the origin of the debt, but the answer showing how it was made for a balance of account, yet denying the amount to be due :—In such a case,—the court having arrived at the conclusion that such was its origin, *It was held,* that the onus of proof, to rebut amount, was on the defendant.

An irregularity in a master's office, in a matter of practice connected with his report, is to be corrected by motion and not through an exception.

Where a mortgage is given professedly for an account which had yet to be adjusted and the mortgagor, by his answer, showed that he had repeatedly attempted to obtain a settlement without effect and denied that any thing like the amount claimed is due, it is incumbent on the mortgagee to produce accounts and evidence to make out the amount.

---

BILL for foreclosure and sale of mortgaged premises.    *Oct. 11, 1843.*

A reference had been had to compute the amounts due on the different bonds and mortgages embraced by the suit.

*Mortgagor and Mortgagee.*

The great dispute between the parties was, as to the extent of this amount.

The case came before the court on exceptions to the master's report.

*Exception.*
*Master's Report.*

The opinion of the vice-chancellor contains sufficient of the facts to make out the principles involved.

*Master's office.*
*Surcharge and falsify.*

Mr. *A. Thompson,* for defendants.

Mr. *L. H. Sandford,* for complainant.

*Evidence.*

THE VICE-CHANCELLOR :—Two of the bonds and mort-   *Sept. 1844.*

gages having been given on the settlement of accounts, for balances appearing at the time to be due, they are, *prima facie*, evidence that the amounts, payable by the condition of the bonds, are due.

The defendants undertake to controvert the evidence which the instruments furnish upon their face. The burthen of proof is, then, on the defendants to impeach the consideration, by showing that they were given for more than was due at the time or that they have been reduced by subsequent payments. From the course of proceeding taken in this cause, the defendants, Benson and Myers, are in the condition of parties surcharging and falsifying stated or settled accounts. Their answers, used before the master upon the reference, point out various errors, omissions and false charges in the accounts, which, it is alleged, formed the consideration of the first two bonds and mortgages. The answers are not evidence, however, except so far as they are responsive : for the defendants can have no other benefit from them than from answers replied to. Hence, the defendants' first exception, viz.—"that the master has computed the amount due as upon bill *pro confesso*, wholly disregarding the answers in all respects"—if true, in point of fact, would be well taken ; and the case would have to be sent back to the master. But, I do not understand that the master has done so. It nowhere appears that the answers were offered to be read and were rejected or not looked into on the reference. I cannot, therefore, assume such to have been the fact ; and as the first exception depends on an alleged matter of fact, which does not appear, it must be overruled.

The second exception insists, that the amount reported to be due on the two first bonds and mortgages is excessive. It appears that the master has allowed the whole of the principal sums payable by the bonds—viz., two thousand five hundred and sixty-one dollars and seventy cents, and one thousand nine hundred and twenty-six dollars and twenty-nine cents, with interest on both, as claimed by the bill from the thirtieth day of October one thousand eight hundred and thirty-seven—and has given credit only for the money admitted by the bill to have been received from Van Lew on account, being five hundred and fifteen dollars

and eighteen cents, and has deducted nothing for errors, omissions and false charges in the accounts, which, the defendants say, formed the principal alleged consideration of these two bonds and mortgages. The first point to be established is, that these instruments were based upon previously existing accounts and were given to secure the balances therefor. The bill is silent as to the origin of the bonds and mortgages, except in stating that Benson became indebted to the complainant in the sums for which they were given and, in order to secure the payment thereof, he executed those instruments and that the whole of the principal sums and the interest, from the thirtieth day of October one thousand eight hundred and thirty-seven (with an exception as to some money received of Van Lew applicable to the interest) are actually due; and it calls on the defendants to answer under oath. The defendants in answering (Benson, of his own knowledge) deny that, at the time of giving the bonds and mortgages, Benson was justly indebted in the sums therein mentioned or to near those sums. Now, this is a responsive denial as to the amount of the indebtedness at the time; but, beyond this denial, the answers going on to state the origin of the bonds and mortgages and the considerations on which they were founded, such as balances of account— and that such accounts were false and erroneous—are not strictly responsive and, therefore, not, of themselves, evidence. Nor is there any direct proof, from the examination of witnesses, to connect these bonds and mortgages with stated accounts in the books of the complainant and of the partnership of De Mott and Sandford in his possession. It is left to inference; but the inference is strong and irresistible. The complainant has not attempted to show the contrary; but has, seemingly, acquiesced in that assertion, by allowing the books to be examined by persons produced as witnesses, for the purpose of tracing out the indebtedness upon the books and showing the considerations on which the bonds and mortgages were founded. As to the bond and mortgage of one thousand nine hundred and twenty-six dollars and twenty-nine cents, it does appear from the books how that sum was made up, corresponding in date, as well as amount, with the bond and mortgage so as to leave no

1843.

DE MOTT
*v.*
BENSON.

doubt of the fact that they were founded upon that consideration. I think it may be safely assumed that the first bond and mortgage was, likewise, given to secure what was originally a book-account indebtedness and for an amount which had been ascertained by the striking of a balance and for which notes had, in the first place, been given, which were cancelled upon the giving of the bond and mortgage. The next point, then, under the same second exception is, whether there were any errors and false and fraudulent charges in the accounts which unjustly swelled the balance and induced the giving of bonds and mortgages for a greater amount than was fairly due? This is strongly asserted in the answer of Benson; and various particulars, both of omission and commission, are set out. The first is, the alleged omission to credit him with the amount of the Rowley note; but, even supposing the complainant to have received that money for Benson, the evidence fails to prove that Benson has not had credit for it or been allowed the amount in the settlement of one thousand eight hundred and thirty-three or in the previous one, which appears by the books to have taken place in one thousand eight hundred and twenty-seven. The accounts previous to one thousand eight hundred and twenty-seven do not appear to have been investigated. The amount of the note may have been passed to the credit of Benson at that early day. The presumption is that it was so; and it rests with Benson to show affirmatively that he was not only entitled to an allowance for that note, but that, through error or mistake, it has been entirely omitted in any of the accounts. This, he has not done.

The next complaint is that Benson has been charged with compound interest on his account of many years standing, and thus the balance has been swelled which entered into the first bond and mortgage. I find no evidence whatever in support of this allegation of the answer. The next is that, on striking the balance when the first bond and mortgage were given, an item of one hundred and ninety dollars and thirteen cents was charged on the complainant's books and included in the bond and mortgage as and for interest on the balance of an account of about seven hundred and fifty dollars for six months, whereas the interest was only

twenty-six dollars and twenty-five cents and thus an error of one hundred and sixty-three dollars has crept into the accounts to the prejudice of Benson. The testimony of Charles W. Ingersoll, in relation to the excessive nature of this item, is far from being satisfactory. He merely says, he found a charge for interest of one hundred and ninety dollars and thirteen cents on the complainant's ledger which he, the witness, supposes was too much. He supposes the charge ought to have been about twenty-five dollars to thirty dollars. The grounds or reasons for his supposition are not given. The court cannot receive this in evidence of overcharge or mistake. Next, it is alleged that there is a charge on the complainant's ledger against Benson of one hundred and ten dollars and fifty three cents under date of 1st July, 1831, with a reference to a page in the day-book from which it purports to have been posted, whereas no such charge and even no such page is contained in the day-book. This appears to have been a charge for interest like the one hundred and ninety dollars and thirteen cents before mentioned, which is also on the ledger but not found in the day-book. The circumstance that both these items purported to have been taken from the day-book when, in fact, no such entries existed there, was calculated to create a suspicion of the accuracy of the complainant's books and a distrust of the fairness and good faith of the entries on the ledger. The complainant has undertaken to remove this unfavorable impression, by the testimony of Selfridge, a witness examined before the master. He merely proves that, if interest was computed on the principal of annual rests in the accounts from April one thousand eight hundred and twenty-seven to November one thousand eight hundred and thirty-nine, the amount would somewhat exceed the two sums charged on the ledger for interest. It does not appear, however, that Benson ever assented to that mode of making up an interest account or, from the nature and course of dealing, that the complainant was entitled to or claimed interest in that way. Still, as it was incumbent on the defendants to impeach the correctness of those charges by affirmative evidence and as they have failed to produce such evidence, there can be no displacement of these two sums from the mortgage at this

time. Not so, however, of five other items on the ledger of De Mott & Sandford's books, in which their account against Benson is posted and which account formed the consideration of the second mortgage for one thousand nine hundred and twenty-six dollars and twenty-nine cents, dated on the thirtieth day of October one thousand eight hundred and thirty-seven. These items are glaringly false and erroneous, as appears from the books themselves. The instances are these :—A charge on the day-book of four shillings is posted into the ledger as ten pounds four shillings ; another amount of one pound twelve shillings and six pence in the day-book is posted as eleven pounds, twelve shillings and six pence ; another of two pounds, eleven shillings and five pence is posted as twelve pounds, eleven shillings and five pence ; another of one pound, two shillings and seven pence is posted as eleven pounds, two shillings and seven pence ; and another of one pound, eight shillings and three pence is posted as eleven pounds, eight shillings and three pence. Thus swelling the account fifty pounds or one hundred and twenty five dollars beyond its true amount. This sum should have been deducted at once from the face of the bond and mortgage by the master.

There is some reason to apprehend that other errors of overcharge may have occurred and contributed to swell, unjustly, the amount for which the second bond and mortgage were given. It would seem, for instance, that nine hundred and eighteen dollars and eighty-five cents, charged for interest on the first bond and mortgage, from the twelfth day of November one thousand eight hundred and thirty-three to the thirtieth day of October one thousand eight hundred and thirty-seven and then brought in to help make up the one thousand nine hundred and twenty-six dollars and twenty-nine cents, for which the second bond and mortgage were given, was excessive by about two hundred dollars, unless, indeed, compound interest was calculated. There is no allegation in the answers complaining of that, however, as one of the exorbitances to which Benson has been subjected in his dealings with the complainant, and there is nothing in the proofs to show that Benson may not have agreed to be charged with interest upon interest when it got in arrear.

Other errors of small amount are discoverable on an inspection of the books according to some of the witnesses, sometimes against tho one and then against the other of the parties ; but these are not the subject of examination at present. There has been no order or decree throwing open the accounts and making the reference which has taken place a matter of general accounting between the parties nor has the production of the books before the master been required. In pointing out errors, by way of surcharge and falsification, the defendants have not specified those additional items to which the witnesses have alluded. They cannot, therefore, be further noticed.

The next question (still under the second exception) is, what amount should be credited to the defendants for the Van Lew bond and mortgage. The master has allowed a credit óf no more than the complainant admits by his bill to have been realized, viz : five hundred and fifteen dollars and eighteen cents ; and has credited it as applicable only to the interest in arrear on the bonds and mortgages. The evidence is not satisfactory that the Van Lew bond and mortgage were assigned to the complainant in absolute payment and satisfaction of so much of the prior indebtedness. The receipt given on the taking of the assignment has not been produced and, in the absence of that receipt and from the circumstances attending the transaction as far as they are disclosed, the inference is that the bond and mortgage were to apply as payment only so far as money should be collected or realized from them. And the defendants have given no evidence of any thing collected or realized beyond the sum admitted by the complainant. The master could not, therefore, allow any more.

The third exception, in relation to the admissibility of Selfridge and Manning's testimony and the master's refusal to allow an adjournment and the alleged impeachment of Van Lew, is not well taken. If there was any irregularity in the master's office, then, as a matter of practice, the defendants should have moved to correct his proceedings or to set aside his report; but, in no point of view, either as a matter of practice or as to merits, are these objections, in my opinion, sustainable.

Then, as to the fourth exception, touching the third bond and mortgage dated the first day of July one thousand eight hundred and thirty-nine for four thousand dollars. The master, it appears, has followed the bill; and allowed exactly what it claims as due upon it, viz: two thousand and twenty six dollars and twenty-one cents of principal, exclusive of any deficiency or balance which might remain of the first two mortgages and which the four thousand dollar bond and mortgage were intended to cover. The question is, whether the master was right in adopting the claim of the bill, without further proof, in the face of the denials in the answer?

The bill shows that a fresh indebtedness having accrued since the thirtieth day of October one thousand eight hun-hundred and thirty-seven and the complainant having released a part of the premises from the liens of the two previous mortgages, it was agreed to make the bond and mortgage in four thousand dollars, so as to secure, as well such portions of the two prior mortgages as were not secured or were rendered insecure by the complainant's having released a part of the premises, as all other indebtedness of Benson to the complainant; and, then, it goes on to say, that Benson, being indebted to the complainant in divers sums of money, (not specifying the sums or amounts) made and executed the bond and mortgage for the four thousand dollars. And in a subsequent part of the bill (fol. 108) the allegation is, that, exclusive of the amounts remaining unpaid on the two first bonds and mortgages, there is due (at the time of filing the bill, the second day of October one thousand eight hundred and forty-one) on the third bond and mortgage the sum of two thousand and twenty-six dollars and sixty-one cents or thereabouts. The answer admits the execution of this third bond and mortgage for four thousand dollars; and says they were executed without any settlement of accounts or the ascertainment of any precise amount due to the complainant, but that the understanding was that the complainant received the bond and mortgage to hold as collateral security for what Benson was indebted to the complainants, if any thing was due to him, first securing what was not then secured by the two previous bonds and mortgages; that, from the time of giving the bonds and mortgages of the thirtieth

day of October one thousand eight hundred and thirty-seven, the complainant and Benson continued to have mutual dealings and accounts and, at the time of executing the four thousand dollar bond and mortgage, there may have been some small balance of such accounts due the complainant: but the defendants are not aware there was any such balance due, as he, Benson, has repeatedly and in vain attempted to effect a settlement of said accounts with the complainant. And in a subsequent part of the answer (about fol. 64) the defendants, distinctly and unequivocally, deny that, exclusively of the amount remaining unpaid on the two first mentioned bonds and mortgages, there is or was, at the time of filing the bill due to the complainant on this last bond and mortgage the sum of two thousand and twenty-six dollars and sixty-one cents or any thing like that sum and they verily believe that, on a fair settlement, the balance, if any thing, would be very small. The parties do not appear to differ in any essential particular about the origin of this last bond and mortgage or the object or purposes for which the same were given, They were not given to secure any previously ascertained and specific amount of indebtedness. There had been no examination of the accounts between October one thousand eight hundred and thirty-seven and the first day of July one thousand eight hundred and thirty-nine. No balance had been struck ; and the amount of four thousand dollars appears to have been adopted as a nominal sum, sufficiently large, as was supposed, to cover the amount of such indebtedness and to make good the security of the two previous mortgages. It is not alleged in the bill that four thousand dollars was the sum fixed on and agreed to be paid as the debt which was then due or to become due —on the contrary, it is very manifest, from the bill itself, that the bond and mortgage were given for an open account, which was to be the subject of adjustment and settlement afterwards ; and the bill does not show that such adjustment and settlement has ever taken place with the assent or concurrence of Benson. It would seem that the complainant, by himself, has undertaken to ascertain how much was due up to the time of filing his bill ; but his statement, showing that result, has not been submitted to Benson for his appro-

val, who swears, in his answer, that he has repeatedly and in vain attempted to effect a settlement of the accounts ; and denies that any thing like the sum claimed is due. Under these circumstances, it was certainly incumbent on the complainant to produce his accounts and furnish some satisfactory evidence of the amount due to him on this bond and mortgage. The production of the bond and mortgage was not evidence of the amount which he was entitled to receive, by reason of the special character belonging to them. Nor is his own assertion in the bill, contradicted as it is by the answer, such evidence.

The burthen was on the complainant to prove the amount really due; and not on the defendants to prove how much less than four thousand dollars was due : because the mortgage was confessedly given, not to secure a debt of four thousand dollars absolutely, but to cover an unliquidated amount. In this respect, very different from the two preceding mortgages, which were based on balances struck and assented to at the time and, consequently, *prima facie* correct. I think the master has erred in adopting the complainant's demand of two thousand and twenty-six dollars and sixty-one cents as the amount due, without proof and, in reporting that amount with interest exclusive of any deficiency that might arise on the first two mortgages.

The fourth exception must, consequently, be allowed ; and the fifth and sixth, necessarily, follow the allowance of the fourth. My conclusion is—and I shall accordingly order—that the first and third exceptions to the master's report be overruled. That the second exception be allowed in part and disallowed in part,—that is to say, that it be allowed so far as respects the sum of one hundred and twenty-five dollars, which the master ought to have deducted from the principal of the bond and mortgage for one thousand nine hundred and twenty-six dollars and twenty-nine cents, dated the thirtieth day of October one thousand eight hundred and thirty seven, being five several sums of ten pounds each falsely added to the charges in the day book when posting the entries into the ledger (one of the books of De Mott & Sandford) and forming a part of the consideration of the bond and mortgage ; and that the

second exception stand overruled in every other particular. That the fourth and the fifth and sixth exceptions be allowed, (the two last as consequent on the former;) and that it be referred back to the master to correct his report, by striking off one hundred and twenty-five dollars from the principal of the bond and mortgage of the thirtieth day of October one thousand eight hundred and thirty-seven, reducing it to one thousand eight hundred and one dollars and twenty-nine cents and calculating the interest on that sum as the true amount of such bond and mortgage. And with directions to take proof of the amount of Benson's indebtedness to the complainant, which accrued between the thirtieth day of October one thousand eight hundred and thirty-seven and the first day of July one thousand eight hundred and thirty-nine and which the bond and mortgage of that date were intended to secure over and above making good any deficiency of payment of the two previous bonds and mortgages; and that the master report the amount of such the indebtedness which entered into the consideration of the last mentioned bond and mortgage and the interest due thereon. The defendants to be at liberty to call for the production of the complainant's books and accounts now in question ; and to examine the complainant under oath touching the last mentioned indebtedness ; and both parties to be at liberty to examine witnesses before the master and to produce other evidence in their possession or power. And the master is to be at liberty to make an amended report conformably to these directions. And further, that the complainant pay to the defendants, Benson and Myers, their costs of the second, fourth, fifth and sixth exceptions and of the hearing on the exceptions, to be taxed.